# EXHIBIT C

| | |
|---|---|
| STATE OF NORTH CAROLINA FILED | IN THE GENERAL COURT OF JUSTICE |
| COUNTY OF WAKE 2013 OCT 17 PM 3:24 | SUPERIOR COURT DIVISION |
| | CASE NO. _____ |

DANIEL SPULLER,  WAKE COUNTY, C.S.C. )
                            )
     Plaintiff, BY _____ )
                            )      **COMPLAINT**
   v.                         )     [JURY TRIAL DEMANDED]
                            )
DELBERT SERVICES CORPORATION )
and CASHCALL, INC.,          )
                            )
     Defendants.            )

NOW COMES Plaintiff Daniel Spuller for his Complaint against Defendant Delbert Services Corporation and Defendant CashCall, Inc. (hereinafter collectively "Defendants"), alleging and saying as follows:

## PARTIES

1. Plaintiff Daniel Spuller (hereinafter "Plaintiff") is a citizen and resident of Wake County, North Carolina and is not an infant, incompetent, nor in the military service of the United States.

2. Defendant Delbert Services Corporation (hereinafter "Defendant Delbert") is a corporation organized and existing under and by virtue the laws of the State of Nevada with a principal place of business in Las Vegas, Nevada. Defendant regularly conducts debt collection activities within the State of North Carolina, including Wake County, and is registered to do so with the North Carolina Department of Insurance.

3. Defendant CashCall, Inc. (hereinafter "Defendant CashCall") is a corporation organized and existing under and by virtue of the laws of the State of California with a principal place of business in Anaheim, California. Defendant regularly conducts its business within the State of North Carolina, including Wake County.

1

## FACTUAL ALLEGATIONS

4. The allegations contained in Paragraphs 1 – 3 of this Complaint are hereby reincorporated by reference as if fully restated herein.

5. On or about August 7, 2013, Plaintiff found himself in need of a short term loan. He visited the website located at www.westernsky.com.

6. The entity operating www.westernsky.com, Western Sky Financial, LLC (hereinafter "Western Sky"), is regularly engaged in the business of entering into "payday loan" arrangements at usurious interest rates and advertises its loans in North Carolina by television, radio, and the internet.

7. On its website, Western Sky represented that it did not offer loans to consumers in "California, Colorado, Connecticut, Maryland, Missouri, New York, South Dakota, Washington and West Virginia" but did not exclude North Carolina, even though its loan terms are unlawful in North Carolina, just as they are in the preceding list of states.

8. Under the North Carolina Consumer Finance Act, North Carolina General Statutes § 53-164, *et seq.* ("CFA"), "[n]o person shall engage in the business of lending in amounts of fifteen thousand dollars ($15,000) or less and contract for, exact, or receive, directly or indirectly, on or in connection with any such loan, any charges whether for interest, compensation, consideration, or expense, or any other purpose whatsoever, which in the aggregate are greater than permitted by Chapter 24 of the General Statutes, except as provided in and authorized by this Article, and without first having obtained a license from the Commissioner."

9. Upon information and belief, Western Sky did not obtain a license from the North Carolina Commissioner of Banks to lend amounts of $15,000.00 or less at rates in excess of that

2

permitted by Chapter 24 of the North Carolina General Statutes and is, therefore, subject to the limitations of Chapter 24.

10. On or about August 7, 2013, Plaintiff entered into a loan agreement with Western Sky whereby he agreed to borrow $2,600.00, with $2,525.00 paid to him directly and $75.00 toward a "loan fee," in exchange for making 47 monthly payments of $294.46 (hereinafter the "Loan").

11. The documents and information provided to Plaintiff by Western Sky indicated that the Annual Percentage Rate ("APR") on the Loan was 139.22%.

12. North Carolina General Statutes § 24-1.1 provides that for loans less than $25,000.00, the North Carolina Commissioner of Banks shall monthly issue a maximum rate of interest that may be charged by lenders.

13. The 139.22% APR stated by Western Sky was well in excess of the maximum rate of interest published by the North Carolina Commissioner of Banks for the month of August, 2013.

14. The making of loans such as that made by Western Sky is a Class 1 misdemeanor under North Carolina law. N.C.G.S § 53-166(c). Further, under the CFA, payday lenders may not recover the principal amount of a payday loan. "**[T]he licensee or any other party in violation shall not collect, receive, or retain any principal or charges whatsoever with respect to the loan.**" N.C.G.S. § 53-166(d). Likewise, any purchaser of the usurious loan may not collect upon the debt.

15. North Carolina law explicitly states that the foregoing CFA and consumer credit provisions are applicable to any lender who comes into North Carolina to solicit or otherwise conduct activities. N.C.G.S. § 53-190(b). The CFA also forbids enforcement of any noncomplying

3

loan contract made outside this State. N.C.G.S. § 53-190(a).

16. Upon information and belief, sometime between August 7, 20130 and August 16, 2013, Western Sky sold the Loan to Defendant CashCall who contracted with Defendant Delbert to service the Loan.

17. Disregarding the provisions of N.C.G.S. § 53-166(d), Defendant Delbert has made countless attempts to collect the unlawful Loan and engaged in a pattern of behavior designed to harass and coerce Plaintiff into making the monthly payments.

18. On August 16, 2013, Plaintiff received his first contact, an email, from Defendant Delbert indicating that the Loan had been purchased by an unnamed third-party and that Defendant Delbert would be servicing the Loan. The email stated that Plaintiff's first monthly payment would be due on September 1, 2013 in the amount of $234.00. Even at that amount (rather than the $294.46 stated on the Western Sky advertisement), the Loan's APR would be nearly 109%, well in excess of the amount set for August, 2013 by the North Carolina Commissioner of Banks.

19. Prior to the date that his first scheduled payment was due, Plaintiff was called by a representative of Defendant CashCall. Plaintiff is informed that CashCall has purchased numerous loans made by Western Sky, including many made with North Carolina citizens, and is the current owner of Plaintiff's Loan.

20. The representative of Defendant CashCall indicated that Plaintiff should send his first monthly payment not to Defendant Delbert but directly to Defendant CashCall using Western Union or a similar service.

21. Plaintiff found the communication from Defendant CashCall curious for numerous reasons, including because he had no idea who they were, the nature of their relationship

to Defendant Delbert, and because he had already provided his bank account information to Western Sky so that payments could be made using the Automated Clearing House ("ACH").

22. After the conversation with Defendant CashCall, Plaintiff researched all three involved companies (Delbert, CashCall, and Western Sky) and learned that the loans offered by Western Sky are unlawful in North Carolina and that cease and desist orders had been issued to Western Sky in Massachusetts and lawsuits filed against it by the attorney general of the State of New York and others.

23. On September 4, 2013, after Plaintiff failed to make his first scheduled payment on the Loan on September 1, 2013, Defendant Delbert made its first telephone call to Plaintiff. Since that time, it has made over 100 separate calls. On October 10, 2013 alone Defendant Delbert made 11 calls. On several other days it has made as many as 9, sometimes contacting Plaintiff at his place of employment.

24. On one occasion, an employee of Defendant Delbert communicated with Plaintiff's administrative assistant and falsely represented that she was performing "research" and needed to speak with Plaintiff.

25. Defendant Delbert has also sent emails to Plaintiff indicating that it would be attempting to directly withdraw funds from Plaintiff's bank account. In fact, on two occasions Defendant CashCall has withdrawn funds from Plaintiff's bank account – once in the amount of $2.34 and once for $234.00.

26. After another attempt to withdraw funds by Defendant CashCall was unsuccessful because Plaintiff had canceled the ACH order, Defendant Delbert falsely represented that it could charge an additional $29.00 fee to the account.

27. Defendant Delbert has also falsely represented in emails to Plaintiff that it may report this unlawful debt to credit reporting agencies.

## FIRST CLAIM FOR RELIEF
(Defendant Delbert: Violation of Chapter 58, Article 70, North Carolina General Statutes)

28. The allegations contained in Paragraphs 1 – 27 of this Complaint are hereby reincorporated by reference as if fully restated herein.

29. Defendant Delbert is a "collection agency," as that term is defined by N.C.G.S. § 58-70-115.

30. Plaintiff is a "consumer," as that term is defined by N.C.G.S. § 58-70-90.

31. The Loan described herein is a "debt," as that term is defined by N.C.G.S. § 58-70-90.

32. Defendant Delbert has attempted to collect debt in violation of N.C.G.S. § 58-70-95, in that it has threatened to seize funds from Plaintiff's bank account when it was not permitted to do so by law.

33. Defendant Delbert has attempted to collect debt in violation of N.C.G.S. § 58-70-95, in that it has threatened to report the unlawful and uncollectible debt to credit reporting agencies.

34. Defendant Delbert has attempted to collect debt in violation of N.C.G.S § 58-70-100, in that it has caused Plaintiff's telephone to ring with such frequency as to be unreasonable to constitute harassment to Plaintiff under the circumstances.

35. Defendant has attempted to collect debt in violation of N.C.G.S. § 58-70-110, in that it has falsely represented it has a right to collect upon the usurious loan issued to Plaintiff by Western Sky when, in fact, it is unlawful to do so under North Carolina law.

36. Defendant has attempt to collected debt in violation of N.C.G.S. § 58-70-110, in that it has falsely represented it has a right to fees which it does not have any such right.

37. As a result of the aforesaid unlawful attempts to collect the purported debt, Plaintiff has sustained actual damages, including, but not limited to, emotional distress and embarrassment, and is entitled to actual and statutory damages, as well as his reasonable attorneys' fees, for a total amount in excess of $10,000.00.

### SECOND CLAIM FOR RELIEF
(Defendant Delbert: Violation of Federal Fair Debt Collection Practices Act)

38. The allegations contained in Paragraphs 1 – 37 of this Complaint are hereby reincorporated by reference as if fully restated herein.

39. Defendant Delbert is a "debt collector," as defined by the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(6).

40. Plaintiff is a "consumer," as defined by the FDCPA, 15 U.S.C. § 1692a(3).

41. The Loan is a "debt," as defined by the FDCPA, 15 U.S.C. § 1692a(5).

42. Defendant Delbert has attempted to collect debt in violation of 15 U.S.C. § 1692d, in that it has caused Plaintiff's telephone to ring repeatedly or continuously with the intent to annoy, abuse, or harass Plaintiff.

43. Defendant Delbert has attempted to collect debt in violation of 15 U.S.C. § 1692e, in that it has:

   a. threatened to seize funds from Plaintiff's bank account when it was not permitted to do so by law;

   b. falsely represented that it has a right to collect upon the usurious loan issued to Plaintiff by Western Sky when, in fact, it is unlawful to do so under North Carolina law; and

   c. threatened to report the Loan to credit reporting agencies when it would be unlawful to do so.

44. As a result of the aforesaid unlawful attempts to collect the purported debt, Plaintiff has sustained actual damages, including, but not limited to, emotional distress and embarrassment, and is entitled to actual and statutory damages, as well as his reasonable attorneys' fees, for a total amount in excess of $10,000.00.

### THIRD CLAIM FOR RELIEF
(Defendant CashCall: Violation of Federal Truth in Lending Act)

45. The allegations contained in Paragraphs 1 – 44 of this Complaint are hereby reincorporated by reference as if fully restated herein.

46. The Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, requires lenders to provide accurate disclosures to borrowers of the annual percentage rate for every loan. 12 C.F.R. §§ 226.18(e) & 226.22(a)(1)&(2). The disclosure must be based on the actual legal obligation, 12 C.F.R. §§ 226.5(c) & 226.17(c)(1), so the disclosure of a usurious rate that is unenforceable under state law is inaccurate and violates the act.

47. As an assignee of the purported debt, Defendant is liable for a violation of TILA if such violation is apparent on the face of the disclosure statement, 15 U.S.C. § 1640. Here, Western Sky disclosed to Plaintiff an interest rate of approximately 139% A.P.R. even though the actual legal rate Western Sky could charge was significantly less.

48. As a result of Defendant's violation of TILA, Plaintiff has sustained actual damages, including, but not limited to, emotional distress, and is entitled to actual and statutory damages, as well as his reasonable attorneys' fees, for a total amount in excess of $10,000.00.

### FOURTH CLAIM FOR RELIEF
(Defendant CashCall: Violation of Chapter 75, Article 2, North Carolina General Statutes)

49. The allegations contained in Paragraphs 1 – 48 of this Complaint are hereby reincorporated

8

Case 5:13-cv-00806-D   Document 1-3   Filed 11/20/13   Page 9 of 12

by reference as if fully restated herein.

50. Defendant CashCall is a "debt collector," as that term is defined by N.C.G.S. § 75-50.

51. Plaintiff is a "consumer," as that term is defined by N.C.G.S. § 75-50.

52. The Loan is a "debt," as that term is defined by N.C.G.S. § 75-50.

53. Defendant CashCall has attempted to collect debt in violation of N.C.G.S. § 75-54 in that it has falsely represented that payment was due from Plaintiff right to collect upon the usurious loan issued to Plaintiff by Western Sky when, in fact, it is unlawful to do so under North Carolina law.

54. Defendant CashCall has attempted to collect debt in violation of N.C.G.S § 75-55 in that it has seized funds from his bank account for a usurious loan upon which it is not lawfully entitled to collect.

55. As a result of the aforesaid unlawful attempts to collect the purported debt, Plaintiff has sustained actual damages, including, but not limited to, emotional distress and embarrassment, and is entitled to actual and statutory damages, as well as his reasonable attorneys' fees, for a total amount in excess of $10,000.00

### FIFTH CLAIM FOR RELIEF
(Defendant CashCall: Usury)

56. The allegations contained in Paragraphs 1 – 55 of this Complaint are hereby reincorporated by reference as if fully restated herein.

57. Defendant is subject to Chapter 24 of the North Carolina General Statutes and has charged interest at rates in excess of the maximum rate permitted by Chapter 24 of the North Carolina General Statutes.

58. The loan to Plaintiff by Western Sky was an extension of credit deemed to have been made in this State pursuant to N.C.G.S. § 24-2.1. The interest rate in the loan exceed the

maximum rate allowed by N.C.G.S. § 24-1.1. Under N.C.G.S. § 24-2.1, Western Sky entered into a loan with an understanding that the money loaned shall be returned, with payment or an agreement to pay, a greater rate of interest than that allowed by law, and with a corrupt intent to take more than the legal rate for the use of the money loaned. Defendant was thereafter assigned Western Sky's rights and continued the corrupt attempts to obtain a greater rate of interest than that allow by law. Plaintiff is entitled to recover back twice the amount of interest paid and forfeiture of the entire interest.

WHEREFORE, Plaintiff prays the Court:

1. That Plaintiff have and recover actual and statutory damages of Defendants in an amount in excess of $10,000.00;

2. That Plaintiff recover his reasonable attorneys' fees incurred in this matter from Defendants, or either of them;

3. That the costs of this action be taxed to Defendants, or either of them;

4. For a trial by jury on all issues so triable; and

5. For such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 16th day of October, 2013.

MAGINNIS LAW, PLLC
*Attorneys for Plaintiff Daniel Spuller*

BY: *[signature]*
EDWARD H. MAGINNIS
N.C. State Bar No. 39317
T. SHAWN HOWARD
N.C. State Bar No. 41323

10

Case 5:13-cv-00806-D   Document 1-3   Filed 11/20/13   Page 11 of 12

19 W. Hargett Street, Suite 906
Raleigh, North Carolina 27601
Telephone: 919-526-0450
Fax: 919-882-8763
emaginnis@maginnislaw.com
tshoward@maginnislaw.com